**Fidel Y. AGUILAR, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 0427–93 to 0429–93.**

Court of Criminal Appeals of Texas,
En Banc.

Sept. 21, 1994.

Rehearing Denied Nov. 2, 1994.

Richard Lee Urban, San Antonio, for appellant.

Steven C. Hilbig, Dist. Atty., and Penny Andersen, Alfredo Tavera and Melissa Barlow, Asst. Dist. Attys., San Antonio, Robert Huttash, State's Atty., and Matthew W. Paul, Asst. State's Atty., Austin, for the State.

*OPINION ON STATE'S PETITIONS FOR DISCRETIONARY REVIEW*

MEYERS, Judge.

Appellant was convicted in a single trial of three crimes: two deliveries of heroin and a delivery of cocaine. His punishment was assessed at 25 years confinement in the penitentiary for each offense. The Fourth Court of Appeals reversed these convictions because the trial judge permitted the State to identify the controlled substances alleged in its indictments by eliciting the opinion of an expert witness who had not performed the chemical analyses himself. *Aguilar v. State,* 850 S.W.2d 640 (Tex.App.—San Antonio 1993). The Court thought this to violate our holding in *Cole v. State,* 839 S.W.2d 798 (Tex.Crim.App.1990). We granted the State's petitions for discretionary review to explore the impact of *Cole* upon the admissibility of expert testimony under Texas Rules of Criminal Evidence 703 and 705. Tex. R.App. Proc. 200(c)(2).

The controlled substances in question were sold by appellant to undercover Officer Leo Alonzo of the San Antonio Police Department, and later turned over for analysis to the Bexar County Forensic Science Center (BCFSC), formerly known as the Medical Examiner's Regional Crime Lab. At trial, Joe Castorena, who described himself as a toxicologist "for the medical examiner," was called to testify. After first being qualified as an expert drug analyst,[1] Castorena told how and when BCFSC received the substances here in question, which tests were performed to identify them, and who performed the tests. Throughout his testimony, Castorena evidently had before him several written reports, none of which was offered in evidence or made a part of the appellate record for any other purpose. It is clear from his testimony that Castorena sometimes took his answers directly from these reports, although it is not possible to tell from the record exactly how often he did so. Finally, Castorena was asked whether he had himself formed an opinion about the identity of each substance brought to his lab for analysis. It was at this point that defense counsel raised his first objection.

> Your Honor. Unless the chemist has personal knowledge of making the test, himself, we object to him testifying.

The defense attorney made a similar objection each time Castorena was asked to give an opinion about the identity of a substance tested by BCFSC, but he made no other complaint of any kind about Castorena's testimony.[2] Each objection was overruled without comment by the trial judge. Castorena then stated that, in his opinion, two of the substances were heroin and one was cocaine.[3]

In *Cole*, we held that chemists employed by the Texas Department of Public Safety who test blood, semen, and hair samples in an adversarial context and make subjective judgments about the properties of those substances are "law enforcement personnel" for purposes of Rule 803(8)(B).[4] Accordingly, their reports prepared out of court, if offered to prove the truth of matters asserted therein, may not be received in evidence over a hearsay objection upon the ground that such reports are public records exempted from the hearsay rule.

In the instant cause, the Fourth Court of Appeals held that Castorena's testimony was objectionable as hearsay under our opinion in *Cole*. Although the Court's analysis was not entirely clear, it did depend upon three implicit conclusions. First, the Court evidently found that chemists at BCFSC are law enforcement personnel within the meaning of

---

1. Defense counsel attempted to expedite the qualification process by stipulating to the expertise of Castorena, but was unsuccessful. He later agreed that Castorena was qualified to testify as an expert by declining to interpose an objection when Castorena was tendered as an expert witness.

2. The Court of Appeals must have assumed that these objections were based upon the rule that "hearsay is not admissible except as provided by statute or the[] rules [of criminal evidence]", else it surely would not have thought our opinion in *Cole* to be pertinent. Tex.R.Crim.Evid. 802. We note, however, that appellant's objection does not seem to invoke the hearsay rule. Rather, in plain terms, it relies upon Rule 602, which provides in part that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter." Tex.R.Crim.Evid. 602. Although resting on the same foundation, this rule is not the same as the hearsay rule, and in particular is not subject to the hearsay exceptions of Rule 803. *See* Wendorf, Schlueter & Barton, *Texas Rules of Evidence Manual* VI–19, VI–20 (3d ed. 1994). Nevertheless, because nei-

ther party here contends otherwise, we accept, but only for purposes of analysis, that appellant's objection was sufficient to apprise the trial judge of his reliance on Rule 802.

3. He did this by visually examining three "chromatograms that are generated by ... [laboratory] instruments[.]" These chromatograms were not offered in evidence nor was any testimony describing them elicited before the jury. The laboratory reports upon which Castorena relied apparently also included the opinions of the chemists who performed the laboratory tests, but these opinions were not made known to the jury either. Castorena did testify that "[u]sually the chemists [sic] conclusion concurs with mine."

4. Rule 803(8)(B) provides, in part, that the hearsay rule does not require exclusion of "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies setting forth ... matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, matters observed by police officers and other law enforcement personnel[.]"

Rule 803(8)(B).[5] Second, the Court evidently believed that the testimony of Castorena put matters from laboratory reports prepared by chemists other than himself before the jury over appellant's objection. And finally, the Court held that testimony of Castorena taken from such laboratory reports would only have been admissible, according to Judge Maloney's concurring opinion in *Cole*, if the State had expressly tendered Castorena's testimony for the limited purpose of supporting his expert opinion, and not for the truth of matters asserted in the reports. In our judgment, each of these conclusions evinces a profound misunderstanding of our opinion in *Cole*.

In the first place, it is evident from the nature of appellant's trial objections that his hearsay complaint was directed only at Castorena's expert opinion, and not at testimony taken from laboratory reports prepared by Castorena's subordinates.[6] Yet it is clear under our rules of evidence that the present opinion of a testifying witness does not meet the definition of hearsay because it is not, and never can be, a statement "other than one made by the declarant while testifying at the trial or hearing[.]" Tex.R.Crim.Evid. 801(d). Even if the expert relies in whole or part upon information of which he has no personal knowledge,[7] communicated to him at or before the time he testifies,[8] the admissibility of his opinion is not affected "unless the court determines that he does not have a sufficient basis for his opinion." Tex.R.Crim. Evid. 705(c).[9] Nothing we said in *Cole* pur-

---

5. We also granted the State's petition for discretionary review in this case to determine whether the chemists who performed the laboratory analyses were "law enforcement personnel" within the meaning of this Rule. But the record really contains too little information about BCFSC to answer this question. We do not know, for example, whether it is a public or a private organization, whether it performs laboratory analyses for individuals or groups other than law enforcement agencies, and whether it charges a fee for its services. *Compare Caw v. State*, 851 S.W.2d 322, 324 (Tex.App.—El Paso 1993), *PDR ref'd* 864 S.W.2d 546. Although we recently held in *Garcia v. State*, 868 S.W.2d 337 (Tex.Crim.App. 1993) that medical examiners are not law enforcement officers for purposes of Rule 803(8)(B), it appears that only part of BCFSC's work is actually done for the Medical Examiner's Office. The rest evidently involves chemical analysis of unknown material, performed at the request of law enforcement officers to determine whether it contains any legally controlled substances. Because it was admittedly in this latter capacity that Castorena and his subordinates examined the substances here in question, we do not regard *Garcia* to be controlling in the present context. Nevertheless, because the record does not contain sufficient evidence to determine BCFSC's law enforcement status, the Court of Appeals should have decided which party bore the burden of proof on this question before holding Castorena's testimony to be excludable under *Cole*. Tex.R.Crim.Evid. 104(a). In light of our ultimate disposition, however, we need not reach this question here, and the ground for review raising it is, therefore, dismissed.

6. Appellant maintains that his objection was directed to Castorena's "entire testimony." Brief of Appellant, p. 8. But the record does not support this contention. Because appellant allowed virtually all of Castorena's testimony to come in before voicing any objection to it what-

soever, and because appellant's objection, when it did come, was clearly directed only at Castorena's expert opinion, it is not apparent that appellant actually wanted to exclude anything except Castorena's opinion. Under our system of litigation, a trial judge cannot be faulted for failing to interpret such an objection as a motion to strike earlier testimony about which no complaint was made, especially when the context does not make it clear that the trial judge and opposing counsel also interpreted the objection as a motion to strike. Tex.R.Crim.Evid. 103(a)(1). *See Lankston v. State*, 827 S.W.2d 907 (Tex.Crim.App. 1992).

7. Because Rule 602 "is subject to the provisions of Rule 703, relating to opinion testimony by expert witnesses[,]" an expert witness may rely for his opinion upon information not within his personal knowledge. Tex.R.Crim.Evid. 602. *See* Goode, Wellborn & Sharlot, *Guide to the Texas Rules of Evidence: Civil and Criminal*, 1 Texas Practice § 602.1 at 522, 2 Texas Practice § 703.3 at 44–45 (2d ed. 1993).

8. Before we adopted the Texas Rules of Criminal Evidence, our case law held that an expert opinion was not admissible if based entirely upon hearsay. *Holloway v. State*, 613 S.W.2d 497 (Tex.Crim.App.1981). Rule 703 now provides otherwise. *See* Goode, Wellborn & Sharlot, 2 Texas Practice § 703.1 at 42, § 703.3 at 45–46; *Ortiz v. State*, 834 S.W.2d 343, 346 n. 9 (Tex. Crim.App.1992).

9. Texas Rule of Criminal Evidence 703 provides that "[t]he facts or data in the particular case upon which the expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing[, and i]f of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon

ported to change, nor did it have the necessary effect of changing, this rule. *See Henderson v. State*, 822 S.W.2d 171 (Tex. App.—Houston [1st Dist.] 1991).

It is true, as Judge Maloney emphasized in his concurring opinion, that the Texas Rules of Criminal Evidence include a subparagraph which limits the conditions under which the basis for an expert's opinion may be revealed to the jury.[10] Hearsay not exempted from exclusion by Rule 803(8)(B) is, of course, subject to these conditions. But the limitation does not apply to an expert's opinion itself. Only the "underlying facts or data" upon which the opinion was based are excludable if the danger of unfair prejudice is too great. Judge Maloney's suggestion that evidence of the kind at issue in *Cole* should not be received for the limited purpose of explaining or supporting an expert opinion under Rule 705(d) unless it is expressly tendered for that purpose does not imply otherwise. Rather, it suggests only that the offering party should not be deemed to have intended his offer of a laboratory report for a limited purpose unless he says so, and that a hearsay objection under *Cole* should be sustained if the laboratory report is instead offered without limitation.

In the instant cause, however, the problem envisioned by Judge Maloney did not arise. Clearly, in order to make an accurate identification at trial, Castorena needed to know that the chromatograms he examined were produced by tests performed on the very substances he was asked to identify. It is apparent from his testimony that he relied for this information upon the laboratory reports prepared by his subordinates. But, aside from the necessary implication that the substances tested were the same as those offered in evidence at trial, it does not appear that any of the underlying data upon which Castorena relied to reach his expert opinion was actually elicited before the jury, either by introduction of the laboratory reports themselves or through testimony given in open court. While Castorena did apparently "read" to the jury some information from the reports, the information thus offered merely identified relevant dates, the chemist who ran the tests, and the weight of the substances.[11] The test results upon which Castorena relied for his conclusion that the substances contained heroin and cocaine were neither introduced in evidence nor described for the jury by Castorena's testimony. *Compare Davenport v. State*, 856 S.W.2d 578, 579 (Tex.App.—Houston [1st Dist.] 1993).

In the final analysis, therefore, it is dispositive of appellant's claim that no material of the kind at issue in *Cole* was ever actually offered or received in evidence at trial over his objection, either for the truth of the matters asserted therein or as the basis for an expert opinion. It follows that the trial judge did not err for any of the reasons given by the Court of Appeals in overruling appellant's objections to Castorena's testimony.

The judgment of the Fourth Court of Appeals is reversed and this cause is remanded for consideration of appellant's remaining points.

McCORMICK, P.J., concurs with note:

the subject, the facts or data need not be admissible in evidence."

10. Texas Rule of Criminal Evidence 705(d) provides, in part, that, "when the underlying facts or data would be inadmissible in evidence for any purpose other than to explain or support the expert's opinion or inference, the court shall exclude the underlying facts or data if the danger that they will be used for an improper purpose · outweighs their value as explanation or support for the expert's opinion. If the facts or data are disclosed before the jury, a limiting instruction by the court shall be given upon request."

11. Appellant contends that Castorena's testimony "about the findings in the drug test conducted by a subordinate narcotics chemist was hearsay."

Brief of Appellant, p. 8. That might be so if Castorena had, in fact, testified as to those "findings." But he did not. Although we agree with appellant and the Court of Appeals that some of Castorena's testimony was hearsay, particularly that which reported the weight of the substances tested, it is clear that none of this information was relied upon by Castorena as the basis for his expert opinion identifying the substances. Accordingly, while such testimony might have been excludable as hearsay under *Cole* had appellant raised an objection, the State's failure to offer it for a limited purpose only means that it was actually received for general purposes without objection, just as Judge Maloney warned it would be.

Adhering to the views expressed in my dissenting opinion in *Cole v. State*, 839 S.W.2d 798, 816 (Tex.Cr.App.1992) (McCormick, P.J., dissenting) (op. on reh'g), I concur only in the judgment of the Court.

CAMPBELL, J., not participating.

CLINTON, Judge, concurring.

The opinion of the Court indicates the gravamen of objections made by appellant to the toxicologist testifying as to his opinion about identity of the substances in question is that "the chemist [lacked] personal knowledge of making the test, himself." Maj. opinion at 28. In my judgment the trial judge had no choice but to overrule *that* objection, and the court of appeals was remiss in addressing, much more deciding, points of error complaining of *"inadmissible hearsay."* *Aguilar v. State*, 850 S.W.2d 640, at 641 (Tex.App.—San Antonio 1993).[1]

Although the Court quickly notices that "appellant's objection does not seem to invoke the *hearsay* rule," it is willing to conjure that the court of appeals "must have *assumed* that these objections were based on [Rule 802]." Maj. opinion, at 28, n. 2. Moreover, from similarity between language of the objections and the text in Rule 602, the Court graciously surmises that appellant had in mind the latter rule, but then points out that "[Rule 602] is not the same as the hearsay rule and, in particular is not subject to the hearsay exceptions of Rule 803." *Ibid.*

Given these premises, contrary to the majority, I would not "accept" for any purpose that "appellant's objection was sufficient to apprise the trial judge of his reliance on Rule 802." *Ibid.* Instead of creating a facade to mask a faulty presentation of what we may deem a significant question, we should, just like the majority is so want to do in other instances, dismiss the petitions as improvidently granted.

That failing, because the court of appeals also "reached out" to decide questions not properly preserved for appellate consideration, I join only the judgment of the Court.

BAIRD and OVERSTREET, JJ., join in this opinion.

---

1. All emphasis throughout this opinion is mine unless otherwise indicated. References to a "Rule" are to Texas Rules of Criminal Evidence.